IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMMBERLEY WILSON, for C.W., a minor, ) ) ) Plaintiff, ) ) v. ) ) KILOLO KIJAKAZI, Acting ) Commissioner of Social Security, ) ) Defendant. ) | Case No. 21-cv-00288-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kimmberley Wilson requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381-1383f, filed on behalf of her son, C.W., a minor child. For the reasons explained below, the Court **REVERSES AND REMANDS** the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, an individual under the age of 18 will be considered "disabled" if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D). Social Security regulations implement a three-step sequential process to evaluate a child's claim for benefits under Title XVI. *See* 20 C.F.R. § 416.924. At step

one, the Commissioner determines whether the child is working and whether such work constitutes substantial gainful activity. *Id.* § 416.924(b). If the answer is yes, the Commissioner will find the child not disabled, and the review will stop. *Id.* § 416.924(a). At step two, the Commissioner determines whether the child suffers from a medically determinable impairment that is severe. *Id.* § 416.924(c). If the child has no such severe impairment, again, the Commissioner will find he is not disabled and stop the review. *Id.* § 416.924(a). At step three, the Commissioner determines whether a child's impairment(s) meets or equals a listed impairment and meets the duration requirement of 12 months. *Id.* § 416.924(d). If it does, the Commissioner will find the child disabled; if it fails in either regard, the child will be deemed not disabled. *Id.*

For this third step, the Commissioner first considers whether the child's impairment(s) meets or medically equals the listings under 20 C.F.R. §§ 416.925 and 416.926. If a child's severe impairment or combination of impairments does not meet or medically equal a listing, the Commissioner will then decide whether it functionally equals a listing. *Id.* § 416.926a(a). To make this determination, the Commissioner assesses the functional limitations caused by the child's impairment(s). *See id.* The Commissioner considers how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). If a child's impairment(s) results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listings, and the child will be found disabled. *See id.* § 416.926a(d).

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

2

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

On December 13, 2019, Plaintiff applied for Title XVI supplemental security income benefits on C.W.'s behalf, with a protective filing date of November 19, 2019. (R. 15, 130-35.) Plaintiff alleged C.W. was disabled due to a learning condition and a behavior condition (R. 153) and asserted an amended onset date of November 19, 2019 (R. 142). Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 74-76, 83-88.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on November 18, 2020. (R. 27-49, 89.) The ALJ then issued a decision denying benefits and finding C.W. not disabled. (R. 15-22.) The Appeals Council denied review on May 13, 2021 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 416.1481. Plaintiff timely filed this appeal on July 15, 2021 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

**III. The ALJ's Decision**

In her decision, the ALJ found C.W. was a school-age child on both the date of application and the date of the decision. (R. 16.) At step one, she found C.W. had not engaged in substantial gainful activity since the filing date of November 19, 2019. (*Id.*) At step two, she found that C.W. had the severe impairments of adjustment disorder, attention deficit hyperactivity disorder, and learning disorder. (*Id.*) At step three, the ALJ found C.W. had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R. 16-17.)

The ALJ then found that C.W.'s impairment(s) also did not functionally equal a listing. (R. 17-22.) In making this finding, the ALJ addressed the six functional equivalence domains, determining C.W. had

- a "marked" limitation in the domain of caring for himself (R. 18);
- "less than marked" limitations in the domains of acquiring and using information; attending and completing tasks; and interacting and relating with others (*id.*); and
- no limitations in the domains of moving about and manipulating objects and health and physical well-being. (*Id.*)

Accordingly, the ALJ concluded C.W. was not disabled. (R. 22.)

**IV. Issues**

In her brief, Plaintiff raises a single allegation of error, arguing the ALJ lacked substantial evidence for the conclusion that C.W. had a "less than marked" limitation in his ability to interact and relate with others. (ECF No. 12 at 3-13.) Specifically, Plaintiff argues that the evidence the ALJ relied on conflicted with other portions of the record and otherwise did not merit the weight given by the ALJ. (*Id.*) A large part of Plaintiff's argument simply asks the Court to reweigh evidence considered by the ALJ. To do so

4

would be improper. However, because the ALJ failed to resolve inconsistencies in the record and failed to fully review the evidence, the Court reverses and remands for further proceedings.

## V. Analysis

### A. The Domain of Interacting and Relating with Others

In determining a child's limitation in the domain of interacting and relating with others, the ALJ considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism and authority, and respects and takes care of others' possessions. 20 C.F.R. § 416.926a(i); *see also* Social Security Ruling ("SSR") 09-5p, 2009 WL 396026, at *2 (Feb. 17, 2009).[1] The ALJ evaluates the "whole child" in this analysis, comparing how the child functions every day, and in all settings, to other children of the same age who do not have impairments. *See* SSR 09-1p, 2009 WL 396031, at *2 (Feb. 17, 2009).

School-age children should generally be able to

- develop more lasting friendships with children of a similar age;
- begin to understand how to work in groups to create projects and solve problems;
- have an increasing ability to understand another's point of view and to tolerate differences; and
- talk with people of all ages, share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand.

---

[1] The Ruling notes that the child, "when interacting with a parent, teacher, or other adult, . . . needs to convey respect for the adult." SSR 09-05p, at *3.

20 C.F.R. § 416.926a(i)(2)(iv). Examples of when children are limited in their ability to interact and relate with others include when they (i) have no close friends, or have friends who are older or younger; (ii) avoid or withdraw from people they know; (iii) are overly anxious or fearful of meeting new people or trying new experiences; (iv) have difficulty cooperating with others;[2] (v) have difficulty playing games or sports with rules; and (vi) have difficulty communicating with others. SSR 09-5p, at *7; *see also* 20 C.F.R. § 416.926a(i)(3).

B. **The ALJ's Consideration of the Evidence**

While the Court will not restate the entirety of the record here, much of the evidence the ALJ referenced speaks to C.W.'s ability to interact and relate with others. This evidence included testimony from Plaintiff that C.W.'s "biggest problem" is yelling and screaming at her, throwing items across the house, hitting people with things, constantly throwing a fit, and generally being unable to control himself. (R. 19.) The ALJ also noted testimony that C.W. was suspended for pushing down two students in the first two weeks of school, only does part of his virtual assignments, only likes to play on his terms and does not like to be interrupted, says what is on his mind and makes rude comments, runs around the house uncontrollably, and does not respond to any form of discipline from Plaintiff. (*Id.*)

According to the ALJ, Plaintiff's testimony also acknowledged, however, that "[m]ost of the time, the claimant gets along with his siblings" and that he has "a few friends." (*Id.*) This is not an accurate reflection of the testimony cited. When asked how C.W. got along with his siblings, Plaintiff testified, "Most of the time he doesn't." (R. 37

---

[2] Or, as SSR 09-05p notes, "simply [do] not understand how to accomplish social acceptance and integration with other individuals or groups." SSR 09-05p, at *2.

(emphasis added).) When asked about C.W.'s friends, Plaintiff testified he does "[n]ot really" have any friends he plays with outside school, but that he said he had a few friends when he was attending school in person, which he no longer does. (R. 41-42.)

The ALJ also considered evidence from Willow Crest Hospital between January and April 2019, where C.W. received inpatient treatment for delusional and suicidal thoughts. (R. 20.) Upon admission, C.W. was noted as having difficulties being aggressive with siblings by kicking and hitting them, having impulsive and self-isolating tendencies, and having significant behavior issues that included problems with aggression. (*Id.*)

Further, the ALJ described a single visit from C.W.'s extensive counseling records at Grand Lake Mental Health. (*Id.*) From that May 2019 visit, the ALJ noted that C.W. could do well interacting with peers individually, but that he struggles in groups, and that he displayed signs of anger 4 out of 7 days a week. (*Id.*) However, the ALJ does not appear to have considered a large portion of C.W.'s other counseling records with Grand Lake, which demonstrated his difficulty interacting with others in both his family and at school, his difficulty with authority, and his progress in both regards.[3] (*See generally* Exs. 2F, 3F, 6F, 9F, *located at* R. 274-523, 544-601, 610-774.) These uncited records include C.W.'s treatment notes from November 2019 to November 2020 (R. 440-49, 463-70, 544-

---

[3] The May 2019 visit cited by the ALJ resides in Exhibit 6F, which also includes records from late January 2020 to April 2020. (*See* R. 529-601.) It is not clear whether the ALJ considered the remainder of Exhibit 6F. Meanwhile, the ALJ did not even mention the exhibits containing the remainder of Plaintiff's treatment records—Exhibits 2F, 3F, and 9F (R. 274-523, 610-773)—other than a brief note regarding Exhibit 9F being "submitted and added to the file." (R. 15.) While there is some overlap between 6F and the other exhibits, they are not the same.

601, 628-53, 672-721), the general time frame in which the ALJ was evaluating C.W.'s potential disability.

Additionally, the ALJ considered C.W.'s education records. (R. 20-22.) These records included an Individualized Education Program ("IEP") from Locust Grove Upper Elementary School, where Plaintiff was noted as liking positive attention and recognition when he did well on assignments, and as being friendly to adults and peers. (R. 21.)

The ALJ also considered two teacher questionnaires. First, the ALJ cited a teacher questionnaire completed by Ms. Jenny Mindemann in January 2020. (R. 20 (citing Ex. 4E, R. 161-72).) As characterized by the ALJ, Ms. Mindemann noted some obvious problems in C.W.'s ability to interact and relate with to others. (*Id.*) Although not noted by the ALJ, Ms. Mindemann reported that she saw C.W. for an hour and a half a day, five days a week. (R. 162.) In ranking C.W.'s activities, Ms. Mindemann used a scale that went—in terms of severity—from (1) no problem; (2) a slight problem; (3) an obvious problem; (4) a serious problem; to (5) a very serious problem. (R. 165). While she did find "some" obvious problems—namely that C.W. had daily obvious problems respecting/obeying adults in authority and taking turns in a conversation—Ms. Mindemann also found C.W. had daily serious problems expressing anger appropriately. (*Id.*) At best, the ALJ downplayed the negative aspects of Ms. Mindemann's answers by only mentioning "[s]ome obvious problems"; at worst, the ALJ misstated Ms. Mindemann's findings by failing to mention the daily "serious" problem also noted in her answers.

The ALJ chose instead to focus on a different questionnaire, completed by Ms. Kathy Stephens in November 2020. (R. 21-22 (citing 19E, R. 254-62).) As the ALJ noted, Ms. Stephens observed no problems with C.W. in the domain of interacting and relating

8

with others and indicated that C.W. appeared to be functioning at an age-appropriate level. (*Id.*) The ALJ found the questionnaire "supported and persuasive," as Ms. Stephens had "interaction with the claimant for two years." (R. 22.) The ALJ's characterization of Ms. Stephens' interactions with C.W., however, were not completely accurate. In reality, Ms. Stephens stated as follows regarding the 2020-2021 school year: "[C.W.] is my virtual student, I don't see him[,] I monitor his online courses." (R. 254.) Ms. Stephens' only actual interaction with C.W. had been for a weekly, 50-minute activity class she observed as a librarian during the 2018-19 school year. (*Id.*)

Moreover, the ALJ considered a February 2020 consultative examination ("CE") completed by Dr. William Cooper, where, among other things, he observed that C.W. was aggressive with other students and his siblings, disrespectful to his teachers, had angry outbursts, and—according to Plaintiff—necessitated calls "at least on a weekly basis from his teachers about his acting out." (R. 20.)

Lastly, the ALJ briefly summarized the prior administrative medical findings, which found C.W. to be less than markedly limited in his ability to interact and relate with others. (R. 21 (citing R. 56-57, 69).)

**C.     The ALJ's Failure to Resolve Inconsistencies in the Record**

Considering the above, the ALJ's treatment of evidence was in error. While Plaintiff frames her arguments primarily as an issue with the weight the ALJ gave to particular evidence (*see, e.g.*, ECF No. 12 at 5-6), this Court is not in a position to reweigh evidence. Plaintiff also, however, highlights portions of the record that contrast with the evidence on which the ALJ seemed to rely for her "less than marked" finding, contending these discrepancies render the decision unsupported by substantial evidence. (*Id.* at 5-13 (contrasting the teacher questionnaire of Ms. Stephens with that of Ms. Mindemann,

9

contrasting the notation in C.W.'s IEP with his disciplinary record, pointing generally to C.W.'s extensive counseling records).) The Court agrees that the ALJ failed to resolve material inconsistencies in the evidence, leaving the ALJ's decision unsupported.

As is generally required for all disability claims,[4] in determining childhood disability, an ALJ must "analyze and evaluate relevant evidence for consistency, and <u>resolve</u> any inconsistences that need to be resolved." SSR 09-2p, 2009 WL 396032, at *11 (Feb. 18, 2009) (emphasis added). While the mere presence of an inconsistency "does not automatically mean" no decision is possible, there must be sufficient evidence in the record for the decision to be made. *Id.* at *11 (noting that an inconsistency can often be resolved by weighing the evidence and that an inconsistency can be immaterial when its resolution would not affect the outcome). Here, the inconsistences appear to be material, and yet the ALJ did not engage in any discussion or resolution of the contrasting evidence.

For example, in C.W.'s education records alone there are multiple inconsistencies left unresolved. As Plaintiff points out (ECF No. 12 at 5-8), Ms. Stephens' and Ms. Mindemann's teacher questionnaires are in direct conflict with one another. Ms. Mindemann—who saw C.W. in person five times a week (R. 162)—painted a picture of a child with "obvious" and "serious" limitations in his ability to interact with others (R. 165). Ms. Stephens—who at the time she filled out the questionnaire was C.W.'s virtual teacher—described him as having no limitation whatsoever. (R. 257.) The ALJ omitted the "serious" problem Ms. Mindemann found C.W. to have in expressing his anger

---

[4] *See, e.g.*, 20 C.F.R. § 416.929(c)(4) (when evaluating symptoms, an ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence"); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (when assessing the RFC, the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

appropriately (R. 165) and wholly omitted whether she found Ms. Mindemann's opinion supported or persuasive (R. 20). While it is not a requirement that the ALJ's consideration of a non-medical opinion be articulated in the same way as a medical opinion, 20 C.F.R. § 416.920c(d), here the ALJ explicitly noted she found Ms. Stephens' opinion to be supported and persuasive. (R. 22.) The omission of a similar statement regarding the persuasive value of Ms. Mindemann's opinion, or any consideration of the consistency of her findings, is, therefore, put in sharp relief. Given the discrepancy between the two teachers' descriptions of C.W., a resolution of the inconsistencies was necessary. No such resolution was contained in the ALJ's decision.

Similarly, in an error that might more accurately be described as "glossing over" evidence (ECF No. 12 at 7), the ALJ also failed to resolve the inconsistencies between C.W.'s IEP—and the disciplinary history listed in that IEP—and the remainder of the record. Particularly, though the ALJ found C.W.'s disciplinary issues to be "few and far between," he failed to square this finding with conflicting statements from Plaintiff contained in Dr. Cooper's CE report, where she indicated she received weekly calls from C.W.'s teacher regarding him acting out.[5] (*Compare* (R. 21) *with* (R. 20).) The ALJ also failed to address, as Plaintiff points out, the aggressive nature of the conduct necessitating the disciplinary action. (R. 21.) While C.W. was described as being "friendly to adults and peers" in the IEP, the concrete examples provided in the record depict a child struggling

---

[5] Presumably, the ALJ was referring to the gap in C.W.'s "Discipline Alert" from October 17, 2018, to August 20, 2020, with no items after August 2020. (R. 228.) If so, the ALJ's characterization was also inconsistent with her own review of the record, which found C.W. being seen by a school counselor in January 2019, after becoming angry at school, then being hospitalized from January through April 2019 for aggression and suicidal threats. (R. 20.) Moreover, her review also contained testimony that indicated after C.W.'s August 2020 incident and suspension, he went straight to virtual school. (R. 19).

to interact with others. As Plaintiff highlights, the disciplinary note from August 2020 involved C.W. running "up and push[ing] another student down as hard as he could" due to the simple fact that he "just felt angry." (R. 228.) Plaintiff also described him as being extremely aggressive and angry at home and lacking friends and having difficultly interacting with his siblings. (R. 19; *see also* R. 37, 41-42.) This is corroborated in C.W.'s counseling records from Grand Lake Mental Health, which the ALJ generally ignored. (*See generally* R. 277-410, 415-522, 530-600, 613-773.) In the ALJ's decision, she made no attempt to resolve these inconsistencies or otherwise explain the reasoning behind her ultimate determination of C.W.'s ability to interact and relate with others. While the courts have "no desire to needlessly constrain ALJs by erecting procedural hurdles . . .[,] it is reasonable nonetheless to require that the ALJ's decision be sufficiently articulated so that it is capable of meaningful review." *Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).[6]

Thus, while the undersigned does not make any determination regarding the weight to be given this particular evidence—or whether or not the less than marked finding was proper—it remands the case for further consideration of the inconsistencies in the record in accordance with SSR 09-2p.

### D.     The ALJ's Failure to Consider the Full Record

Moreover, as discussed above, it was also error for the ALJ to omit consideration of a large portion of C.W.'s counseling records. As the ALJ failed to articulate <u>why</u> she declined to evaluate this evidence, her omission was in error.

---

[6] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

In Plaintiff's brief, she sets forth a number of counseling records from Grand Lake Mental Health she believes are supportive of C.W. having more than a "less than marked limitation" in his ability to interact and relate with others. (ECF No. 12 at 9-11.) The ALJ declined to discuss many of these records. (R. 20.) In fact, the ALJ only directly referenced one of C.W.'s visits to Grand Lake, which itself came from a single exhibit that contained just four months of counseling records (*id.*).

While the ALJ is not required to explicitly discuss every piece of evidence, the record must demonstrate that she considered all the evidence, and she must discuss the evidence supporting her decision and the uncontroverted evidence she chooses not to rely on or the significantly probative evidence she rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, there is no indication in the record that the ALJ even considered the counseling records contained in Exhibits 2F, 3F, and 9F (as well as the unmentioned records in 6F).[7] If she did consider them and rejected them, she failed to exercise her duty under *Clifton* to discuss them. *Id.* This omission of over two years of counseling records—and a decision to, instead, rely solely on a single, pre-onset visit out of that two-year period—was erroneous.

This is particularly true given that not only is the ALJ to consider all the evidence in the case record, 20 C.F.R. § 416.920(a)(3), but the regulations specifically contemplate the ALJ considering treatment such as "ongoing therapy" in their determination of disability in children, *id*. § 416.924a(b)(9)(ii). Without accounting for these records—or without an articulation of why they were omitted from her analysis—the ALJ has not made a "careful consideration of the entire record" (R. 16).

---

[7] *See supra* n.3.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 30th day of August, 2022.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT